**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-12-01927-05-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| David P. Rachel, | |
| Defendant. | |

Before the Court are the Government's Supplemental Response to Defendants' Motions for Judgment of Acquittal (Doc. 576) and Defendant Rachel's Reply (Doc. 582). Rachel orally moved for judgment of acquittal at the close of all the evidence and later submitted a written Motion (Doc. 524) in support.  In a November 10, 2014 Order (Doc. 565), the Court ordered supplemental briefing on the Motion, which the parties have now supplied.  For the reasons that follow, Rachel's Motion will be denied.

Federal Rule of Criminal Procedure 29(a) directs courts to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  In considering such a motion, the court "must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Chapman*, 528 F.3d 1215, 1218 (9th Cir. 2008) (citation and internal quotation marks omitted).  "This means that a reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the

1  prosecution, and must defer to that resolution." *United States v. Grasso*, 724 F.3d 1077,

2  1085-86 (9th Cir. 2013) (citation and internal quotation marks omitted).

3  As the Court explained in its previous Order, "Rachel argues that no rational jury

4  could conclude he had any knowledge of or intent to accomplish the known object of the

5  conspiracy, with the result that he cannot be found to have joined the conspiracy.  As a

6  result, he claims, there can be no [conspiracy] liability for the transactions in Counts 17-

7  28, in which Rachel was not otherwise personally involved, and his convictions on those

8  counts should be reversed.  Alternatively, if the Court finds—on the basis of a September

9  22, 2010 telephone conversation admitted into evidence—that the jury could conclude

10  Rachel joined the conspiracy only on that date, he asks the Court to grant judgments of

11  acquittal on Counts 17-19, which grow out of transactions in March, May and June of

12  2010."  Doc. 565 at 5.

13  "To convict [a defendant] of conspiracy, the government must first prove that a

14  conspiracy existed. To prove a conspiracy under 18 U.S.C. § 371, the government must

15  first establish: (1) an agreement to engage in criminal activity, (2) one or more overt acts

16  taken to implement the agreement, and (3) the requisite intent to commit the substantive

17  crime. Once the existence of the conspiracy is shown, evidence establishing beyond a

18  reasonable doubt a knowing connection of the defendant with the conspiracy, even

19  though the connection is slight, is sufficient to convict him of knowing participation in

20  the conspiracy." *Grasso*, 724 F.3d at 1086 (citations and internal quotation marks

21  omitted).  "Where the defendant has a connection (even if slight) to the conspiracy, the

22  government must also show that the defendant's connection to the conspiracy is

23  knowledgeable; that is, the government must prove beyond a reasonable doubt that the

24  defendant knew of his connection to the charged conspiracy. To establish a knowing

25  connection, there need not, of course, be proof that the conspirators were aware of the

26  criminality of their objective. Instead, the government must show that the defendant was

27  aware of the unlawful object toward which the agreement was directed. The government

28  may rely on circumstantial evidence and inferences drawn from that evidence in order to

1    prove the defendant's knowing connection to the conspiracy." *Id.* (citations, internal

2    quotation marks and alterations omitted).

3         While Rachel does not appear to contest the existence of a conspiracy, he asserts

4    he had no "knowing connection" with that conspiracy—or, alternatively, that such a

5    connection did not exist before September 22, 2010.   The evidence to which the

6    Government points in its Supplemental Response suggests a rational jury could conclude

7    otherwise.   According to the Government, Rachel joined the conspiracy no later than

8    February 22, 2010, when Dale Changoo—a broker for Defendant Nickolas' company,

9    PDH—emailed him to request a "reference letter as you suggested regarding PDH

10   closings."  Ex. 214 at 2.  In his response two days later, Rachel mentions that he had

11   "been working with [Nickolas] for a few months now." *Id.* at 1.

12        Rachel argues this communication does not "establish[] knowledge that

13   NICKOLAS (and her conspirators) were engaged in fraud and had no intention of

14   fulfilling the promises to her clients."  Doc. 582 at 5.  But the Government is not required

15   to prove that "the conspirators were aware of the criminality of their objective." *Grasso*,

16   724 F.3d at 1086 (citation and internal quotation marks omitted).   Rather, the

17   Government need only establish "[k]nowledge of the objective of the conspiracy." *See*

18   *id.* (alteration in original) (citation and internal quotation marks omitted).  The jury may

19   assume this knowledge from "circumstantial evidence and inferences drawn from th[e]

20   evidence." *See id.* (citation omitted).  Exhibits introduced at trial suggested that Rachel's

21   co-Defendants had already engaged in substantial fraud by the time of the Rachel-

22   Changoo correspondence.  Despite PDH's failure ever to fund a loan, for instance, letters

23   sent from Defendant Kirby's law office in April and September of 2009 bragged that the

24   company could fund its clients' business loans.  Exs. 158, 186A.  And bank records

25   showed that between April and October of that year, Kirby's escrow account received

26   deposits totaling $6.1 million, some of which Kirby transferred to co-conspirators and

27   other personal acquaintances.  Exs. 1A, 2, 5.

28

1     Together with other evidence that Rachel highlights—for example, a January 8,

2     2010 conversation he had with Nickolas, Ex. 3501, and his subsequent role as an escrow

3     agent in the other Defendants' scheme, *see* Exs. 1B, 53, 106—Rachel's email to Changoo

4     therefore provides enough circumstantial evidence that a rational jury could infer he

5     knew of the conspiracy's unlawful purpose as of February 22, 2010.  The evidence cited

6     above, viewed in the light most favorable to the Government, could establish that Rachel

7     joined the conspiracy in February 2010.  Accordingly, the Court will not address other

8     evidence the Government cited to demonstrate Rachel's involvement in the conspiracy at

9     later dates.

10          "Under *Pinkerton v. United States*, a defendant charged with participating in a

11     conspiracy may be subject to liability for offenses committed as part of that conspiracy,

12     even if the defendant did not directly participate in each offense. *Pinkerton* renders all co-

13     conspirators criminally liable for reasonably foreseeable overt acts committed by others

14     in furtherance of the conspiracy they have joined, whether they were aware of them or

15     not." *Grasso*, 724 F.3d at 1089 (citations and internal quotation marks omitted).  As a

16     result, Rachel may be found guilty of the money laundering charges in Counts 17-28,

17     notwithstanding his lack of personal involvement in the monetary transactions underlying

18     those Counts.

19

20          IT IS THEREFORE ORDERED that Defendant Rachel's Motion for Judgment of

21     Acquittal Pursuant to FRCrP 29 (Doc. 524) is denied.

22          Dated this 9th day of December, 2014.

23

24     _____
       Neil V. Wake

25     United States District Judge

26

27

28

- 4 -